NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRAXIS COMMUNICATIONS NETWORK, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GLAXOSMITHKLINE, PLC, et al.,<br><br>Defendants. | Civil Action No. 15-2733 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants GlaxoSmithKline PLC, GlaxoSmithKline LLC, GlaxoSmithKline Holdings, Inc. (collectively, "GSK") and Stiefel Laboratories, Inc.'s ("Stiefel") (collectively, "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). (ECF No. 27.) Praxis Communications Network, LLC ("Plaintiff") filed opposition (ECF No. 30), and Defendants replied (ECF No. 32). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED.

I.  **Background**[1]

   A.  **Undisputed Facts**[2]

"Stiefel is wholly owned by [GSK] through several levels of subsidiaries." (Defs.' Statement of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 27-2.) "In 2010 and 2011, Stiefel manufactured and sold a line of non-prescription skin care products called Revaleskin." (*Id.* ¶ 3.) "In April 2010, Stiefel sought to increase Revaleskin sales[.]" (*Id.* ¶ 4.) In July 2010, Stiefel hired Plaintiff for the Revaleskin project. (*Id.* ¶ 7.) On July 19, 2010, Stiefel entered into a contract (the "First Contract") with Plaintiff for marketing materials that were used in connection with a program called "A.S.A.P." (*Id.* ¶¶ 16, 42.)

"The First Contract provided [that Plaintiff] would 'develop a six[-]month pilot program designed to increase dollar sales through a coordinated effort with the field sales force that supplements field activity and increases sales penetration among existing and new physician and

---

[1] The Court limits its recitation of the facts to those necessary to decide the instant Motion.

[2] Local Civil Rule 56.1(a) permits a nonmoving party on summary judgment to provide "a supplemental statement of *disputed* material facts." (Emphasis added). Here, in addition to a responsive statement of disputed facts, Plaintiff has filed a Counter-Statement of Undisputed Material Facts ("CSUMF"). (ECF No. 30-1.) In deciding this Motion, the Court adopts the approach taken in *Mehr v. Atlantic City*:

> [T]he Local Rules do not contemplate a nonmoving party furnishing its own statement of undisputed material facts. Indeed, aside from not being contemplated by the local civil rules, such a document is not necessary to defeat summary judgment, as Plaintiff[] must only show that some material fact is in dispute, and need not affirmatively prove [its] case at this point. However, as Defendants have fully responded to this "Counterstatement," and the Counterstatement [] cites to portions of the record, the Court sees no reason not to rely on the contents therein.

No. 12-4499, 2014 WL 4350546, at *3 n.3 (D.N.J. Sept. 2, 2014).

non-physician targets.'"[3] (*Id.* ¶ 44.) "On January 7, 2011, Stiefel entered into a new contract (the "Second Contract") with [Plaintiff] to continue A.S.A.P. beyond the pilot program." (*Id.* ¶ 53.) Defendants agreed to pay at least $20,000 a month, or $240,000 over the course of at least an initial 12-month period, for Plaintiff's services and use of the A.S.A.P. program. (*Id.* ¶ 85.) Similar to the First Contract, "the Second Contract provided [that Plaintiff] would 'develop a specialty expansion program to increase dollar sales[.]'" (*Id.* ¶ 56.) On March 22, 2011, A.S.A.P. was put on hold by Defendants until further notice.[4] (*Id.* ¶ 69.)

On February 19, 2015, Plaintiff filed a three-count Complaint against Defendants in the Superior Court of New Jersey. (*Id.* ¶ 83.) The Complaint alleged: (1) breach of contract ("Count One"); (2) breach of the duty of good faith and fair dealing ("Count Two"); and (3) common law theft and misappropriation of ideas ("Count Three"). (*Id.* ¶ 84.) On April 17, 2015, Defendants removed the instant action, pursuant to 28 U.S.C. §§ 1441 and 1446. (Defs.' SUMF ¶ 87; Notice of Removal, ECF No. 1.) On November 12, 2015, Plaintiff filed an Amended Complaint that included the above Counts, as well as an additional Count for unjust enrichment ("Count Four"). (Defs.' SUMF ¶ 88; Am. Compl. ¶¶ 49-50, ECF No. 13.) On February 23, 2017, Defendants filed a Motion for Summary Judgment seeking to dismiss all Counts. (ECF No. 27-1.)

B. **Disputed Facts**

Plaintiff and Defendants dispute whether the marketing materials used by Defendants were marked confidential. (Defs.' SUMF ¶ 23.) There is also a dispute as to the "owner" of the A.S.A.P. marketing materials. (*Id.* ¶ 24.) In addition, the parties dispute the number of hours worked and

---

[3] "The First Contract did not contain a confidentiality or non-disclosure clause" and "was not governed by a written confidentiality agreement." (Defs.' SUMF ¶¶ 51-52.)

[4] "On August 31, 2012, Stiefel sold Revaleskin to RVS Acquisition, LLC." (*Id.* ¶ 77.) The Amended Complaint and SUMF do not give any further insight about RVS Acquisition, LLC and its role in this matter.

the amount Defendants were to pay Plaintiff for the A.S.A.P. materials. (*Id.* ¶ 61.) Defendants assert that "[Defendants] agreed to pay [Plaintiff] $20,000 a month for 160 hours of work under the Second Contract." (*Id.*) Further, "[i]f [Plaintiff] billed more than 160 hours in a month, [Plaintiff] would bill those additional hours on the following month's invoice. If [Plaintiff] billed less than 160 hours in a month, [Plaintiff] would apply a credit . . . to the following month's invoice." (*Id.*) Plaintiff, however, argues that "[Defendants] agreed to pay [Plaintiff] a $20,000 monthly retainer to be reconciled against actual hours billed for the duration of the program, which was specifically identified as having a one[-]year duration, and for as long as [Defendants] continued to use [A.S.A.P.] or any part of [the A.S.A.P. materials.]" (Pl.'s Resp. to Defs.' SUMF ¶ 61, ECF No. 30-1.)

Defendants and Plaintiff also dispute the amount that was to be paid by Defendants to Plaintiff for its services. (Defs.' SUMF ¶ 71.) Defendants contend that "on May 9, 2011, [Defendants] agreed to pay [Plaintiff] $60,000 'as payment in full for [its] services.'" (*Id.* (alteration in original).) Plaintiff, however, asserts that [Defendants] paid [Plaintiff] . . . the $20,000 retainer for the months of January, February, and March 2011." (Pl.'s Resp. to Defs.' SUMF ¶ 71.)

Plaintiff and Defendants further dispute whether the A.S.A.P. marketing materials were "novel." (Defs.' SUMF ¶ 89.) Plaintiff asserts that it "created a customized marketing program that was based on . . . original thought and creativity, and was novel and unique to Revaleskin." (Pl.'s Resp. to Defs.' SUMF ¶ 89.) Defendants, in contrast, contend that the A.S.A.P. marketing program included "direct mailers, email blasts, or telesales[,]" and that Plaintiff "did not invent the concept[.]" (Defs.' SUMF ¶ 10.)

## II. Legal Standard

Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party[.]" *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (citation omitted). While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson*, 447 U.S. at 250. If the non-moving party fails to:

> make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be "no genuine [dispute] of material fact," [because] a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial.

*Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citation omitted). "Thus, if a reasonable fact finder could find in the non[-]movant's favor, then summary judgment

5

may not be granted." *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008) (citation omitted).

### III. Discussion

Defendants assert that Section 301 of the Copyright Act, 17 U.S.C. § 301, ("Section 301") preempts Plaintiff's breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment claims. (Defs.' Moving Br. 19, ECF No. 27-1.) Defendants further assert that the economic loss doctrine bars Plaintiff's breach of covenant of good faith and fair dealing and misappropriation of ideas claims. (*Id.* at 23.) Defendants also assert that they are entitled to summary judgment with respect to: (1) the breach of contract claim because there was a valid accord and satisfaction; and (2) the misappropriation of ideas claim because Plaintiff cannot satisfy any of the required elements to sustain a plausible cause of action. (*Id.* at 26, 33.)

#### A. Breach of Contract (Count One)

Count One of the Amended Complaint alleges a breach of contract claim against Defendants. (Am. Compl. ¶¶ 36-41.) "To prove a breach of contract under New Jersey law, 'a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform [its] obligations under the contract[,] and that the plaintiff sustained damages as a result.'" *Red Roof Franchising, LLC v. Patel*, 564 F. App'x 685, 688 (3d Cir. 2014) (quoting *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007)).

A "state common law or statutory claim is preempted" by the Copyright Act if: "(1) the particular work to which the state law claim is being applied falls within the type of works protected by the Copyright Act under Sections 102 and 103; and (2) the state law seeks to vindicate 'legal or equitable rights that are equivalent' to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *See Video Pipeline, Inc. v. Buena Vista Home*

6

*Entm't, Inc.*, 210 F. Supp. 2d 552, 563 (D.N.J. 2002) (citations omitted). "Thus, the preemption analysis encompasses both a 'subject matter requirement,' and a 'general scope' or 'equivalency' requirement, respectively." *Id.* at 563-64 (citations omitted).

The subject matter requirement of copyright Section 102 of the Copyright Act, states, in pertinent part: "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device[.]" 17 U.S.C. § 102 (a); *see Video Pipeline*, 210 F. Supp. 2d at 564-65. Here, the materials associated with A.S.A.P. that were created by Plaintiff fall within the scope of the subject matter governed by Section 102. Further, neither party contests the applicability of the subject matter prong. The Court, therefore, concludes that the A.S.A.P. materials fall within the subject matter of copyright.

The issue here is whether the state law claims asserted by Plaintiff create rights which are "equivalent to any of the exclusive rights within the general scope of copyright as specified in [S]ection 106." *See* 17 U.S.C. § 301. If so, those claims are preempted. *See Video Pipeline*, 210 F. Supp. 2d at 564. The inquiry under the second prong of the Section 301 preemption analysis provides that:

> [A] right which is "equivalent to copyright" is one which is infringed by the mere act of reproduction, performance, distribution or display. . . . If, under state law, the act of reproduction, performance, distribution or display . . . will in itself infringe the state created right, then such right is preempted. But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie "within the general scope of copyright," and there is no preemption.

*Id.* (quoting *SBK Catalogue P'ship v. Orion Pictures Corp.*, 723 F. Supp. 1053, 1066 (D.N.J. 1989)). In other words, a state law claim will not be preempted where "[a]n extra element is

required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action[.]" *Expediters Int'l of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 479 (D.N.J. 1998) (citation omitted); *Video Pipeline*, 210 F. Supp. 2d at 564. "A state law claim is not preempted[, however,] if the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id.* (citation omitted).

With respect to the federal preemption issue, "[p]rotection from breach of contract is not equivalent to copyright protection, since 'a breach of contract claim requires an "extra element"' that renders the claim qualitatively different from a claim for copyright infringement: a promise by the defendant." *Video Pipeline*, 210 F. Supp. 2d at 566 (quoting *Expediters Int'l of Wash., Inc.*, 995 F. Supp. at 483). In this case, Plaintiff's breach of contract claim asserts that Stiefel breached its contractual obligation under the Second Contract by "placing all further work and payment 'on hold' indefinitely." (Am. Compl. ¶ 30.) These alleged promises under the Second Contract "amount to more than promises to refrain from producing, performing, distributing[,] or displaying the works at issue[.]" *Video Pipeline*, 210 F. Supp. 2d at 567. Because Plaintiff's breach of contract claim involves an extra element in addition to prohibiting the acts of reproduction, distribution, performance, and display, the Court finds that it is not preempted by federal copyright law. Accordingly, the Court finds that Count One is not barred by the Copyright Act.

Defendants also argue that Count One is barred because "[a] valid accord and satisfaction superseded the Second Contact." (Defs.' Moving Br. 26.) "[A]n accord and satisfaction requires a clear manifestation that both the debtor and the creditor intend the payment to be in full satisfaction of the entire indebtedness." *Zeller v. Markson Rosenthal & Co.*, 691 A.2d 414, 416 (N.J. Super. Ct. App. Div. 1997). "It is the universal rule . . . that an accord and satisfaction arises only where

both parties intend the payment to terminate a then existing controversy." *Nat'l Elec. Ben. Fund. v. StarKo Elec. Servs., Inc.*, No. 06-1446, 2008 WL 2683617, at *5 (D.N.J. July 1, 2008) (quoting *Louis Schlesinger Co. v. Kresge Found.*, 388 F.2d 208, 210 (3d Cir. 1968)). Defendants have the burden to prove this affirmative defense. *See Roberts v. Rich Foods, Inc.*, 654 A.2d 1365, 1372 (N.J. 1995).

"In those cases in which a check bears a notation indicating that it is being tendered in full satisfaction of the disputed debt, [courts] impute to the creditor an intent to be bound by the amount of the check if the creditor deposits the check for collection, notwithstanding the deposit is made 'under protest.'" *Zeller*, 691 A.2d at 416. "The requisite manifestation of intent may be expressed in the check itself, or in the letter or account, or receipt accompanying the remittance, or even orally in conversation." *Cranmer v. Phila. Indem. Ins. Co.*, No. 14-3206, 2015 WL 5545030, at *3 (D.N.J. Sept. 18, 2015) (citation and quotation marks omitted). In *TJD Architects v. Cervini's Auto Designs*, the parties disputed whether tender of a check constituted payment for services rendered pursuant to a contract, or whether it constituted full accord and satisfaction. No. DC-004705-08, 2010 WL 694561, *2 (N.J. Super. Ct. App. Div. Mar. 2, 2010). There, the plaintiff crossed out the defendant's notation on the tendered check, which stated that the check was a "[r]elease of all claims for fit-out/Cervini's auto designs," and wrote in "[n]o, see [l]etter [a]ttached[,]" before depositing the check. *Id.* at *1-2. Because of the plaintiff's edit, and the reasonable ambiguity in the defendant's initial notation, the court concluded that there was "a genuine factual dispute as to the scope of [the defendant's] tender." *Id.* at *2.

Here, notwithstanding Plaintiff's contention that there is a dispute regarding Defendants' intent and manifestation that their $60,000 payment would be a satisfaction of the entire disputed amount, it is undisputed that Plaintiff accepted payment. (Pl.'s Opp'n Br. 14; Def.'s Moving Br.

9

26.) Specifically, although Plaintiff's representative alleges that he "accepted the $60,000 payment as partial satisfaction of the outstanding balance[,]" Plaintiff did not take any contemporaneous action to indicate the belief that the tendered payment was only intended to serve as payment for the services under the Second Contract, and not intended to discharge the entire debt. (Heigl Decl. ¶ 51; Def.'s Moving Br. 26.) Thus, despite a bona fide dispute over Plaintiff's invoices and whether Stiefel agreed to pay Plaintiff $60,000 "as payment in full for [Plaintiff's] services," Plaintiff accepted Stiefel's payment. (Defs.' SUMF ¶¶ 71-72; *Bayside Chrysler Plymouth Jeep Eagle, Inc. v. Ma*, No. DC-9699-02, 2006 WL 1449783, *8 (N.J. Super. Ct. App. Div. May 20, 2006) ("Even if the creditor protests, there is acceptance the moment the check cashing occurs.") (citation omitted). Accordingly, the Court finds that there was a valid accord and satisfaction, and grants Defendants' Motion for Summary Judgment as to Count One.[5]

### B.  Breach of the Duty of Good Faith and Fair Dealing (Count Two)

Count Two of the Amended Complaint alleges a claim for breach of the duty of good faith and fair dealing against Defendants. (Am. Compl. ¶¶ 42-44.) "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty

---

[5] Plaintiff also argues that the tendered check "was for the amounts due under the Second Contract[,]" and that additional consideration is required to support an accord and satisfaction. (Pl.'s Opp'n Br. 14.) The Court finds this argument unpersuasive. "[A]n accord and satisfaction requires that consideration be given as partial payment of the original debt." *Nye v. Ingersoll Rand Co.*, 783 F. Supp. 2d 751, 764 (D.N.J. 2011). In *Nye*, in connection with the sale of a subsidiary, the defendant paid the subsidiary's employees their benefits due under a 2004 plan. *Id.* at 757. Included with the payment checks were letters stating that endorsement of the checks signified agreement that the payment represented "payment in full for any and all amounts owed[.]" *Id.* The court concluded that "[t]he checks distributed . . . were for the amounts due under the 2004 [p]lan and no more. [The defendant] was contractually obligated to pay these sums . . . [and] they cannot serve as consideration[.]" *Id.* at 764. Unlike *Nye*, the claims brought in the instant matter relate to a single contract, the Second Contract. Thus, the Court concludes that Defendants are not attempting to discharge a prior debt dispute by merely fulfilling their obligations under a subsequent contract. *See Nye*, 783 F. Supp. 2d at 765.

10

imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002) (citations omitted). In other words, a party "cannot maintain a [tort] claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." *Hahn v. OnBoard LLC*, No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009) (citing *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259-60 (N.J. 2002)).

Here, the alleged conduct under Count Two stems from the duties owed by Stiefel under the Second Contract. (*See* Am. Compl. ¶¶ 42-44.) Further, there exists no independent duty beyond the parties' contractual duties outlined in the Second Contract. The Court, therefore, finds that the economic loss doctrine "prohibits [P]laintiff[] from recovering in tort economic losses to which [its] entitlement flows only from a contract[.]" *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). Accordingly, the Court concludes that the economic loss doctrine bars the claims asserted with respect to Count Two.[6]

### C. Common Law Theft and Misappropriation of Ideas (Count Three)

Count Three of the Amended Complaint alleges common law theft and misappropriation of ideas claims against Defendants.[7] (Am. Compl. ¶¶ 45-47.) To state a claim for misappropriation of ideas, a plaintiff must show that "(1) the idea was novel;[8] (2) it was made in confidence[;] and

---

[6] The Court need not reach the Copyright Act analysis, as the claims are barred under the economic loss doctrine.

[7] Defendants argue that Plaintiff "failed to plead in its First Amended Complaint that A.S.A.P. or its materials were novel, and therefore Praxis fails to allege a claim for which the law provides relief. A judgment on the pleadings is warranted on this basis alone." (Defs.' Moving Br. 34 n.5 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).)

[8] "The test for determining whether an idea is sufficiently novel to warrant protection has not been clearly defined in New Jersey." *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 808 (D.N.J. 2000). "Novelty, ultimately an issue of law for the court, nevertheless depends on the underlying facts." *Read v. Profeta*, No. 15-2637, 2016 WL 8679223, at *4 (D.N.J. Apr. 15, 2016); *Duffy*, 123

11

(3) it was adopted and made use of" by the defendant. *Flemming v. Ronson Corp.*, 258 A.2d 153, 157 (N.J. Super. Ct. Law Div. 1969), *aff'd o.b.*, 275 A.2d 759 (N.J. Super. Ct. App. Div. 1971); *see also Johnson v. Benjamin Moore & Co.*, 788 A.2d 906, 914 (2002). In other words, "[t]he tort of misappropriation of ideas is rooted in the notion that the defendant, by exploiting a confidential idea entrusted to [it], has received 'a benefit which it is unjust for [it] to retain.'" *Read v. Profeta*, No. 15-2637, 2016 WL 8679223, at *3 (D.N.J. Apr. 15, 2016) (quoting *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 807-08 (D.N.J. 2000)). The Court finds that Plaintiff fails to state a claim for relief. Specifically, Plaintiff fails to plead that A.S.A.P. was "novel." (*See generally* Am. Compl.; Am. Compl. ¶¶ 45-47.) Further, neither the First Contract nor the Second Contract contained confidentiality or non-disclosure clauses, and Plaintiff did not disclose A.S.A.P. to Stiefel in confidence. (Defs.' SUMF ¶¶ 63-64); *Flemming*, 258 A.2d at 157. Accordingly, the Court concludes that Plaintiff fails to state a claim for common law theft and misappropriation of ideas and grants Defendants' Motion for Summary Judgment as to Count Three.

---

F. Supp. 2d at 809. Thus, "a court should not hesitate to make a determination as to an idea's novelty unless material facts underlying the issue of novelty are in dispute." *Duffy*, 123 F. Supp. 2d at 809. "The law requires 'innovation, originality, or invention'; ideas that are obvious, or in the public domain, will not suffice." *Read*, 2016 WL 8679223, at *4 (citing *Duffy*, 123 F. Supp. 2d at 809). Factors relevant to the novelty inquiry include, but are not limited to the following:

> (1) the idea's specificity or generality (is it a generic concept or one of specific application?), (2) the idea's commonality (how many people know of this idea?), (3) the idea's originality (how different is this idea from generally known ideas?), (4) the idea's commercial availability (how widespread is the idea's use in the industry?), (5) the idea's obviousness (was the idea an obvious adaptation or application of an idea already in the domain of public knowledge?), and (6) the idea's secrecy (did an otherwise novel idea lose its novelty status because of inadequate steps taken to maintain the idea's secrecy?).

*Duffy*, 123 F. Supp. 2d at 810 (citation omitted). In conducting its inquiry, the court should weigh these and any other factors relevant to the novelty issue.

### D. Unjust Enrichment (Count Four)

Count Four of the Amended Complaint alleges an unjust enrichment claim against Defendants. (Am. Compl. ¶¶ 48-50.) "New Jersey does *not* recognize unjust enrichment as an independent tort cause of action." *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (emphasis in original) (citing *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) (explaining that "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion"). "Rather, in the tort setting, 'an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched).'" *Id.* (quoting *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999)). Thus, to state a claim for unjust enrichment under New Jersey law, "a plaintiff must show both that [the] defendant[s] received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted). "The unjust enrichment doctrine requires that [a] plaintiff show that it expected remuneration from the defendant[s] at the time it performed or conferred a benefit on defendant[s] and that the failure of remuneration enriched defendant[s] beyond [their] contractual rights." *Id.* (citations omitted).

Here, the Amended Complaint alleges that "Defendants have received the benefit of using the A.S.A.P.[] program materials without paying for them[,] . . . [and] [i]t would be unjust to permit [] Defendants to benefit from the unlawful use of the A.S.A.P.[] program materials and not compensate Plaintiff." (Am. Compl. ¶¶ 49-50.) On January 7, 2011, Stiefel entered into the Second Contract with Plaintiff "to continue A.S.A.P. beyond the pilot program[.]" (Defs.' SUMF ¶ 53.) To that end, to the extent that Plaintiff's unjust enrichment claim is predicated on rights created by

the Second Contract, it is duplicative. *See Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983) ("Quasi-contract liability will not be imposed, however, if an express contract exists concerning the identical subject matter. The parties are bound by their agreement, and there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties."). Because the allegation raised under the unjust enrichment claim fails to demonstrate that Defendants were enriched beyond their contractual rights, Plaintiff's unjust enrichment claim fails. *See VRG Corp.*, 641 A.2d at 526. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Count Four.[9]

## IV. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted.[10] The Court will issue an order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: September 14, 2017

---

[9] With respect to the federal preemption issue, "[c]ourts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to the rights protected by the Copyright Act; thus, unjust enrichment claims relating to the use of copyrighted material are generally preempted." *See Video Pipeline*, 210 F. Supp. 2d at 567 (citation omitted); *Winstead v. Jackson*, No. 10-5783, 2011 WL 4407450, at *4 n.4. The Court need not reach the Copyright Act analysis, as the claims are duplicative of Count One.

[10] Plaintiff seeks to hold GSK liable for Stiefel's alleged conduct. (Am. Compl. 1.) Under certain circumstances, however, "courts may disregard the corporate form and pierce the corporate veil to hold the shareholders responsible for the actions of the corporation." *Port Drivers Fed'n 18, Inc. v. All Saints Exp., Inc.*, 757 F. Supp. 2d 443, 456 (D.N.J. 2010). Because the Court grants Defendants' Motion for Summary Judgment as to all Counts, the Court need not reach the issue of whether the corporate veil was pierced in the instant litigation. Further, the Court denies without prejudice Defendants' Motion to Exclude the testimony of Gerald A. Carrafiello pursuant to Federal Rule of Evidence 702 (ECF No. 31) as moot.